## R. G. ATKINS v. THE STATE.

1. AGGRAVATED ASSAULT.— To constitute an assault and battery the injury must be intentionally inflicted; but when injury is inflicted by violence the intent to injure is presumed, and it devolves upon the defense to repel the presumption by countervailing proof. The intended injury may be bodily pain, constraint, a sense of shame, or other disagreeable emotion of the mind. Manipulation of a woman without her consent, in order to obtain sexual knowledge of her person, may superinduce such emotions without inflicting bodily pain.

2. PRACTICE IN THE COURT OF APPEALS.—This court presumes the competency of a trial judge to control the argument of counsel, and does not revise his rulings in doing so unless it is made apparent that they were in violation of law or an abuse of his judicial discretion to the prejudice of the appellant.

3. CONTINUANCE.— DILIGENCE is not shown by merely alleging a timely procurement of process for the absent witness. A proper disposition of the process must also be alleged.

4. NEW TRIAL.— A new trial should not be granted in order to enable the defense to obtain testimony to impeach the evidence of the prosecuting witness; and it is immaterial, it seems, that such testimony is newly-discovered.

5. FACT CASE.— See evidence held sufficient to sustain a conviction for aggravated assault and battery committed by unwarranted approaches to a woman.

APPEAL from the County Court of Dallas. Tried before the Hon. R. E. BURKE, County Judge.

The indictment charged the appellant with committing an aggravated assault and battery upon Mary Sorrells, on October 24, 1879. He was found guilty, and his punishment was assessed at a fine of $100.

Mrs. Sorrells was the principal witness for the State. She stated that she had known the defendant for several years, and lived about half a mile from him. His wife died early in the year 1879, and in less than two months after that event he came to witness's house and made "unfair proposals to her" by telling her that his wife was jealous of her and that he wanted pay for his trouble

with his wife. Witness told him that his wife was dead and not to talk about what she had done. Witness resisted his proposals and he went off. The witness had been a married woman for some twenty years, and had a daughter eighteen years old. Defendant had taught school in the neighborhood, and witness's children had gone to school to him. His family and witness had been intimate. Shortly after his visit already mentioned, the defendant came again to witness's house, and told her he had a secret to tell her. She asked him what it was, and he replied that he feared that witness's husband was getting jealous of him. Witness denied that such was the fact, and defendant again told her that he wanted her to be his wife for a while. Witness refused, and he apologized to her and went away. On several subsequent occasions the defendant repeated these proposals to the witness, but was refused. In the evening of October 24, 1879, the witness and her son, aged eleven, being the only persons at home, the defendant came and asked her if a shirt he had left her to wash was ready for him. Witness told him it was not ironed, but would soon be, and for him to come back by there. He went off and returned after night. Witness's little son was asleep, and defendant then told her that "he had come for it, and meant to do with her like her husband does." "He tried to kiss me and I wouldn't let him; told him he shouldn't slobber on me. He took hold of my hand, and I jerked away from him and told him to go away. I gave him his shirt; I think I threw it at him. I did not wake my eleven-year-old son; neither did I leave the house to notify any one."

The witness further stated that as soon as her daughter came home she told her of the defendant's conduct, but did not inform her husband until some time afterwards, and then apprised him of it by degrees, as she was afraid of a difficulty between him and the defendant. When the defendant came after the shirt, he said he was going

to preach the next day, which was Sunday, and wanted the shirt to wear on the occasion. Witness denied that she told Mrs. Virginia Vessels, after October 24, 1879, that the defendant was a perfect gentleman and had always treated witness well, and that she intended to quilt a quilt for him without charge, nor that she intended to go over and spend a day with him, as he looked so lonesome. She may have said, prior to said date, that she would quilt a quilt for him. She never received two half-dollars from defendant, but may have accepted a small piece of cinnamon bark from him. She never told defendant that if her husband got jealous of them she would let him know. She received one or two letters from defendant, but never told him that she carried them in her shoe until she could get a chance to read them. She destroyed them after reading them, but did not show them to her husband nor tell him that she got them. Witness had always thought that it was man's place to propose, but that it was a woman's privilege to refuse.

Mrs. Sorrells identified as defendant's handwriting a letter dated August 19, 1880, and addressed to her husband and herself. This letter was introduced in evidence by the prosecution and occupies several pages of the record. Commencing with a complaint of persecution and slander, a few excerpts will sufficiently exhibit its tone and purport:

"Mary," protests the writer, "nothing but an immediate revelation from God himself would have made me believe you would have persecuted me and sworn the hard things you have against me. Do you for one moment think you can under the circumstances escape the malediction of Heaven or the vindictive wrath and punishment of Almighty God? If you answer in the affirmative, let me warn you as one who has suffered all the persecutions, slanders and misrepresentations that his

Satanic Majesty could heap upon me, through and by his active subordinates, that if you persist in your course towards me you will have to take up your abode with devils in Hell, there doomed to hear the clanking of chains and serbean peals, and the hideous outcry of hell-hounds' never-ceasing bark. . . . You know you told me, and whispered to me, and said that if Miss —— did not come to stay with you that I might come, and I said in a joke, ' I wish Miss —— was dead.' You told me afterwards Bettie heard me, and you told her it was some of my nonsense. . . Remember you told me if John got jealous of us you would let me know. Remember the apples, cinnamon bark, candy, and letters you got from me. You told me you put my letters in your shoe until a convenient time to read and then burn them. These questions and hundreds of others, you will remember, will be put to you in open court. My lawyer said he would tell it all on you. Where is the dollar I gave you? I have no idea you ever told Jack I gave you two half-dollars. If you appear against me in court I will sue you for one dollar, and make affidavit how I come to give you the dollar and why I gave it to you; but if you do not appear against me I will say no more about it."

Mr. Ard, for the State, testified that the defendant, in November, 1879, and in the presence of some twenty-five or forty members of his church, stated that, on the preceding 24th of October, he was at Mrs. Sorrell's house; that he took hold of her arm and tried to feel of her pulse because he thought her pulse was too quick; that he tried to kiss her, but she refused and said she didn't want to be slobbered on; and that he then got mad and told her he had a notion to stamp the —— out of her.

This was all the evidence adduced at the trial. As before stated, the jury found a verdict of guilty, and assessed a fine of $100 against the appellant. He moved for a new trial, and as one of the reasons therefor

assigned the overruling of his application for a continuance. The application was based on the absence of Mrs. Vessels, by whom he expected to contradict certain portions of the testimony of Mrs. Sorrells, the prosecuting witness. The affidavit of Mrs. Vessels was filed in support of the motion. It stated that Mrs. Sorrells, subsequent to the date of the alleged assault, told the affiant that the defendant was a perfect gentleman, and that she, Mrs. Sorrells, had always been well treated by him; that she would quilt a quilt for him, free of charge, and would go to his house and spend a day with him, as she knew he was lonesome. The motion for a new trial was overruled, and the defense excepted. All other matters are disclosed in the opinion of this court.

No brief for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

Winkler, J.   The indictment charges that on October 24, 1879, in Dallas county, the accused "did unlawfully make an aggravated assault and battery upon the person of one Mary Sorrells, and did then and there assault, strike, restrain, illtreat, ill-use, and in violence lay his hands upon her the said Mary Sorrells, she the said Mary Sorrells being then and there a female person, and he the said Atkins being then and there an adult male person, contrary," etc.

The case being transferred from the District Court, where the indictment was found, to the County Court, for trial, the accused applied for a continuance, alleging that he could not go to trial for the want of the testimony of one Mrs. Virginia Vessels. The application for a continuance was overruled, and the defendant took his bill of exceptions to the ruling of the court. The defendant was tried and convicted, a jury having returned a verdict

finding the defendant guilty, and assessing his punishment at a fine of one hundred dollars, upon which judgment was rendered. The defendant's counsel moved the court to grant him a new trial on the grounds following: "Because, 1st, the verdict of the jury is contrary to the law and the evidence; 2, because the court erred in its charge to the jury, wherein they were told that any indecent familiarity with the person of a female, or defendant Mary Sorrells, she experienced feelings of constraint, a sense of shame, or any other disagreeable emotion of the mind whatever, then he would be guilty under the law of an aggravated assault and battery, and you should so say by your verdict; 3, because the court erred in permitting the counsel for the State, to wit, A. W. Nowlin, a private prosecutor, and the county attorney, to go outside of the record and discuss the private character of defendant; that the court, over the objection of defendant, allowed counsel for the State in the conclusion to discuss defendant's church relations, to wit, that he was a minister of the gospel, and that the prosecuting witness, Mary Sorrells, was a sister in his church; to discuss, without proof, that one of defendant's counsel was a greenbacker and a candidate for congress on that ticket, when there was no proof before the jury of any of these facts, and the court refused then and there to permit counsel for defendant to reply to these arguments made outside the record; and, 4, because the court erred in overruling defendant's application for a continuance or postponement of this case." In an amended motion, made by leave of the court, an affidavit of the witness Virginia Vessels, on account of whose absence a continuance was asked in the first instance, is appended to and made part of the motion for a new trial. This motion was overruled and a new trial refused.

Bills of exception were reserved, 1, to the overruling of the application for a continuance; 2, to the charge of the court as set out in the motion for a new trial; and, 3,

to the refusal of the court to grant a new trial. The errors assigned are substantially the same as those mentioned in the several bills of exception, and may be conveniently considered as presented in the bills of exception, in connection with the several grounds set out in the motion for a new trial.

Whether the first ground of the motion for a new trial is tenable or not depends upon whether there is any error specified in any of the other grounds set out in the motion, save the question of the sufficiency of the evidence to support the verdict. With reference to the second ground of the motion, embraced in the second bill of exceptions, it may not be amiss to state that the charge of the court is not correctly stated in the motion for a new trial. The charge excepted to, as set out in the motion for a new trial, omits to state that the improper liberties taken with the injured female were against her will and consent; which, if true in fact, would amount to this, that any indecent familiarity with the person of a female which produced a sense of shame or other disagreeable emotion of the mind would constitute an aggravated assault and battery; whereas the law only makes these causes actionable in this character of cases when the violent or indecent familiarity with the person of a female is against her will. *Pefferling* v. *State*, 40 Texas, 486; *Curry* v. *State*, 4 Texas Ct. App. 574; *Ridout* v. *State*, 6 Texas Ct. App. 249; *Veal* v. *State*, 8 Texas Ct. App. 474; Clark's Crim. L. note 72, § 5, pp. 164–5.

By comparing the charge as given by the court with that complained of in the motion for a new trial, it will be apparent, not only that the latter is stated inaccurately, but also that the charge as given contained in fact what it would have been a material defect to omit. The charge given is to the effect that if the jury "find and believe from the evidence before you that the defendant used any indecent familiarity with the person of Mary Sorrells, without her consent, and by means of said indecent familiar-

ity she experienced feelings of constraint, a sense of shame," etc., he would be guilty. The injury done must be intentionally inflicted; but when injury is inflicted by violence, the law presumes the intent, and it rests with the person who inflicted the injury to show the innocence of the intention; and the injury intended may be either bodily pain, constraint, a sense of shame or other disagreeable emotion of the mind. Penal Code, art. 485. We are of opinion that the charge of the court was sufficiently explicit under the proofs adduced to inform the jury that if these indecent familiarities, embracing the language and conduct of the defendant, and the taking hold of the person of the female, were against her will and consent, and the jury so believed, then these acts thus done would constitute an aggravated assault and battery. The act of violence seems to have been proved, and the law, as before stated, presumes that the intent was to injure, and there seems not to have been any attempt on the part of the defendant to show any other intention on his part than to have carnal knowledge of her person, and in his efforts to attain that object his language and conduct were of a character well calculated to inspire any virtuous female with disagreeable emotions of the mind.

The third ground of the motion for a new trial, based on the idea that the State's counsel, in the conclusion, was permitted to travel out of the record and discuss matters not in evidence, and that counsel for the defendant was not allowed to reply thereto, is not so presented by the record before us that we can determine understandingly whether the matter complained of was of a character calculated to injure the rights of the defendant and militate against a fair trial, or not. It may have been in response to some position previously taken by the defendant's counsel, or a mere harmless pleasantry, for aught that appears from the record before us. If injury resulted to the defendant by the course pursued by counsel representing the prosecution, or in the court's refusing

to allow a reply thereto, this should have been presented by bill of exceptions or in some other tangible form, so as to enable this court to inquire into it understandingly. But even if this had been done, and it should have appeared that the subject was trivial, and that the conduct of the proceedings was not beyond what the court might well have permitted in the exercise of a proper judicial discretion, even then this court would not interfere, unless it had been further made to appear that the rights of the defendant to a fair and impartial trial according to the prescribed forms of law had been violated. The trial judges, we must presume, are competent to direct a trial before them, and under the law to control the argument of counsel, and we have never been inclined to revise this kind of action or to revise this character of rulings unless it is made apparent to us that the rules of law have been violated, or that the discretion confided by law to the judges had been abused, and abused to the prejudice of the defendant.

We must be permitted in this connection to remark with reference to the assumption complained of to the effect that the State's counsel was permitted to discuss the church relations of the parties; that, whilst we are of opinion the argument might well have been omitted, we find that the case is not without evidence tending at least to the effect that the defendant was a minister of the gospel. The prosecuting witness testified that the defendant, when he came after a shirt, which seems to have been on or about the date mentioned in the indictment, "said he was going to preach the next day, which was Sunday, and he wanted the shirt to wear on the occasion."

The defendant before the trial applied for a continuance, stating the name and residence of an absent female witness, and what it was expected he would be able to prove by her; and in the motion for a new trial he offered the affidavit of the witness as to what she would testify

in the case. The diligence employed in order to secure the attendance of the absent witness is set out in the application for a continuance; a subpœna had been issued on August 25, 1880, and served September 2, 1880, and on September 6, 1880, an attachment was issued. The indictment was filed at the December term, 1879, and was transferred to the County Court February 11, 1880. The application for continuance was filed and overruled on September 9, 1880, three days after the issuance of attachment for the witness. The object of the testimony of the absent witness seems to have been a preparation to impeach the testimony of the prosecuting witness. The application for a continuance states that an attachment had issued for the absent witness, which had not been served. It is not stated that any effort was made to serve the attachment, nor even that it was placed in the hands of an officer for service. This is not such diligence as the law demands. It is not sufficient to state merely that the process was sued out; but it must be shown what was done with it. See cases cited in note 186 to page 471, art. 1386, Clark's Crim. Law. The court did not err in overruling the application for a continuance. A postponement for the time was not asked for; on the contrary, the application states that "there is no reasonable expectation that the attendance of the witness can be secured to the present term of the court by a postponement of the case to a future day of the term."

It seems that counsel for the defendant, by embracing in the motion for a new trial the overruling of the application for a continuance and then appending the affidavit of the witness, took the view that the court should have granted a new trial under the *proviso* to art. 518, Code Crim. Proc., clause 6, to this effect: "*Provided*, that, should an application for a continuance be overruled and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses was of a mate-

rial character, and that the facts set forth in said application were probably true, a new trial should be granted." To our minds the question here presented is this: should the court have granted a new trial in order to enable the defendant to procure the attendance of a witness solely for the purpose of impeaching the testimony of a witness for the prosecution?

In the present case it is not pretended that the testimony of the witness was newly discovered; but if such had been the case, even then a new trial should not have been granted solely for the purpose of impeaching a witness. The defendant must have known the general features of the case and what would necessarily be litigated. He must have known the charge against him which would have to be maintained by proof. *Williams* v. *State*, 7 Texas Ct. App. 163, and cases collated in § 6, note 230, Clark's Crim. L. p. 571.

Did the evidence support a verdict of guilty? It is true there are some peculiar features in the testimony of the prosecuting witness. She was evidently subjected to a very rigid cross-examination. Still her testimony did not stand alone entirely; and however this may be, while she appears to have been a woman occupying an humble sphere in society, still the jury gave credence to her statements, and mainly upon them found the defendant guilty, and the court below must necessarily have believed that her statements were true, else he would have set the verdict aside and granted the defendant a new trial. In our opinion there is sufficient testimony to support the finding of the jury. After a careful examination of the whole case, we find no such error committed on the trial below as would warrant a reversal of the judgment, and it is affirmed.

*Affirmed.*

Hurt, J., did not sit in this case.